## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ALAMI EL MANSOURI,           )

                 Petitioner,   )

v.                    )       Case No. CIV-06-669-F

                     )

JUSTIN JONES,           )

                 Respondent.  )

## REPORT AND RECOMMENDATION

Petitioner, Alami El Mansouri, was found guilty of multiple offenses in violation of Oklahoma law arising out of a home-invasion attempted robbery on November 22, 2001. He has filed a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. It is recommended that his petition be denied.

## I.    Procedural Background

Petitioner was convicted in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-01-6188 of the following criminal offenses: Unauthorized Use of a Motor Vehicle (Counts 2 and 3); Attempted Robbery (Count 5); First Degree Burglary (Count 6); Pointing a Firearm at Another (Counts 7 and 9); Assault and Battery with a Dangerous Weapon (Count 10); Kidnapping (Counts 11 and 12); and Conspiracy to Commit Robbery (Count 13). Petitioner was sentenced to five years each on Counts 2 and 3, forty years on Count 5, twenty years on Count 6, ten years each on Counts 7, 9, 10 and 13, and fifteen years each on Counts 11 and 12.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA reversed Petitioner's conviction in part, dismissing Counts 7 and 12 on grounds of double punishment. The OCCA affirmed Petitioner's conviction as to all remaining counts. *See* Response to Petition for Writ of Habeas Corpus [Doc. #13], Exhibit 3, OCCA Summary Opinion.

Petitioner then sought additional relief through state post-conviction proceedings. The district court denied post-conviction relief, and the OCCA affirmed the denial. *See* Response, Exhibit 5, OCCA Order Affirming Denial of Post-Conviction Relief.

## II.    Case Background

Petitioner and three co-defendants were charged with multiple offenses arising out of a home-invasion attempted robbery. On Thanksgiving evening, November 22, 2001, three masked men entered the home of the Khalil family. Six-year-old Basil Khalil was in his bedroom having just gone to bed for the night. His father, Samir Khalil, and mother, Najaya Khalil, were watching television. Two men pulled guns on Samir Khalil and demanded that he produce a safe the men believed to hold money. A third man pulled a gun on Najaya Khalil. A fourth man was positioned as the lookout.

Six-year-old Basil heard shouting and screaming, grabbed a phone and hid in the kitchen while calling 911 for help. Officer Lanham was the first police officer to arrive on the scene. One of the men came toward him aiming a firearm. Officer Lanham fired shots and the man retreated. Eventually all four men escaped from the scene of the crime.

One of the men, Johnnie Johnson, immediately went to the apartment of his ex-girlfriend, Roxzanne Segura Mansouri.  At the time, Ms. Mansouri was married to Petitioner but was separated from him and living apart.  Petitioner was sharing an apartment with Johnson.  Johnson made several incriminating statements to Ms. Mansouri implicating both himself and the other men, including Petitioner.   At Johnson's request, Ms. Mansouri drove him by the crime scene. Ms. Mansouri later accompanied Johnson, in a separate vehicle, to his apartment where she witnessed him remove a trash bag full of incriminating items.

During the course of these events and unbeknownst to Johnson, Ms. Mansouri telephoned a friend and police officer to report what was happening.  The officer instructed her to drive to his apartment.  Ms. Mansouri followed Johnson a short while, then exited the highway and drove to the friend's apartment.  She then went to the police station to provide a full report.

Johnson was the first of the four men to be apprehended by police.  At the time of his arrest, he had Petitioner's wallet on his person.  Petitioner was arrested approximately seven days later.

Multiple charges were brought against all four men.  Petitioner was tried separately.  Additional facts will be addressed as pertinent to the claims raised.

## III.   Grounds for Habeas Corpus Relief

Petitioner brings the following six grounds for federal habeas corpus relief: (1) ineffective assistance of appellate counsel for failing to raise on direct appeal Petitioner's claims of ineffective assistance of trial counsel; (2) ineffective assistance of trial counsel for

failing to: (a) raise the "fair warning" doctrine of Okla. Stat. tit. 22, § 404; (b) request a photo line-up prior to trial and object to the in-court identification of Petitioner by the victim, Samir Khalil; and (c) investigate the content of a videotape and allege a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) Petitioner's due process rights were violated based on the in-court identification by Samir Khalil; (4) Petitioner's rights pursuant to *Brady* were violated because the State withheld a videotape which constituted exclupatory evidence; (5) Petitioner's double jeopardy rights were violated when he was charged with attempted robbery with a firearm, assault and kidnapping; and (6) hearsay statements introduced at trial violated Petitioner's confrontation rights and the resulting constitutional error was not harmless error.

Petitioner raised grounds Five and Six on direct appeal of his conviction.[1]  Petitioner raised grounds One through Four for the first time in state post-conviction proceedings.

## IV.    <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004); *Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir.1999). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that

---

[1]Petitioner raised an additional claim on direct appeal that he does not reassert in this action.

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In applying the deferential AEDPA standard, the court first determines whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment. *Turrentine*, 390 F.3d at 1189. If so, the court considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Id*. A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different" and "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, we must apply the

harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995). *Turrentine*, 390 F.3d at 1189.

The AEDPA standard does not apply to issues not decided on the merits by the state court. *Turrentine*, 390 F.3d at 1189. Instead, such issues are decided on the basis of a *de novo* review. *Id.*

## V.   Analysis

### Grounds One and Two -- Ineffective Assistance of Counsel

In Ground One, Petitioner claims he was deprived of his Sixth Amendment right to effective assistance of counsel because appellate counsel failed to raise claims of ineffective assistance of trial counsel on direct appeal. In Ground Two, Petitioner claims trial counsel was ineffective for failing to: (a) raise the "fair warning" doctrine of Okla. Stat. tit. 22, § 404; (b) request a photo line-up prior to trial and object to the in-court identification of Petitioner by the victim, Samir Khalil; and (c) investigate the content of a videotape and allege a violation of *Brady* by the State.[2]

---

[2]Respondent contends the first two ineffective assistance of trial counsel claims in Ground Two are procedurally barred. Respondent further contends Petitioner cannot establish cause to overcome the procedural bar through his claims of ineffective assistance of appellate counsel because those claims are without merit. As discussed *infra*, a review of the merits of Petitioner's ineffective assistance of trial counsel claims is necessary to determine whether appellate counsel was ineffective. Because trial counsel was not ineffective in failing to raise the claims, the first two claims raised in Ground Two should be denied. The Court, therefore, need not address Respondent's procedural bar argument.

As to the third claim of ineffective assistance of trial counsel raised in Ground Two, Respondent contends the claim is unexhausted and therefore would now be procedurally barred. Respondent also correctly points out that Petitioner's post-conviction application raised a *Brady* violation as a stand-alone claim. *See* Response, Exhibit 4, Petition-in-Error, at 5, Proposition III. Petitioner did not include that claim as part of his ineffective assistance of counsel claim. *See id.*, (continued...)

To prevail on this claim, Petitioner must demonstrate both that his counsel's performance was deficient and that his counsel's performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Deficient performance entails an error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005). Counsel's representation must fall below "an objective standard of reasonableness." *Id*. at 1241 *citing Strickland*, 466 U.S. at 688.

Petitioner must also demonstrate prejudice, *i.e.*, Petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Pursuant to *Strickland*, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

When, as here, a habeas petitioners's Sixth Amendment claim is based upon appellate counsel's failure to raise a particular issue, the court must consider the merits of the omitted

---

[2](...continued)

Proposition IV at 6-7.  However, in affirming the denial of post-conviction relief, the OCCA treated Petitioner's application as having raised the *Brady* claim both as a stand-alone claim and as grounds for his claim of ineffective assistance of appellate counsel.  *See* Response, Exhibit 5, OCCA Order Affirming Denial of Application for Post-Conviction Relief at 2.  ("Petitioner's fourth proposition attempts to avoid procedural bar by claiming his appellate counsel was ineffective for failing to assert or adequately raise his first three propositions.").  The OCCA deemed the stand-alone claim to be procedurally barred.  The OCCA further determined Petitioner's counsel was not ineffective for failing to raise a *Brady* claim.  For this reason, the merits of Petitioner's *Brady* claim are reviewed in the context of Petitioner's ineffective assistance of appellate counsel claim.  *See, e.g., Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (explaining that a claim of appellate ineffectiveness can be based on a failure to raise a particular issue on appeal and that when based on such alleged conduct, the court looks to the merits of the omitted issue).

issue.  "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Cargle v. Mullin*, *supra*, 317 F.3d at 1202. "On the other hand, if the omitted issue has merit but is not so compelling, [the court] must examine the issue in relation to the rest of the appeal."  *Malicoat v. Mullin*, 426 F.3d 1241 (*citing Cargle*, 317 F.3d at 1202).  "Habeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue."  *Id.* (*citing Neill v. Gibson*, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001)).

## A.      Failing to Challenge Joinder of Offenses

Petitioner first claims that appellate counsel should have raised an ineffective assistance of trial counsel claim based on trial counsel's failure to challenge joinder of offenses pursuant to Okla. Stat. tit. 22, § 404.  Because this ineffective assistance of trial counsel claim lacks merit, Petitioner cannot show the deficient performance and prejudice necessary to prevail on his ineffective assistance of appellate counsel claim.

Petitioner claims that pursuant to Okla. Stat. tit. 22, § 404, he could only be convicted of a single offense.[3]  He argues, therefore,  that he did not receive "fair warning" from the

---

[3]Section 404 provides:

The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the

(continued...)

8

State that he would be convicted of multiple offenses and this lack of fair warning violated his due process rights.

Petitioner's claim is precluded by Oklahoma law. Prior to 1968, joinder of offenses was governed by § 404 which prohibited the joinder in one information of two or more separately punishable offenses. *See Glass v. State*, 701 P.2d 765, 767 (Okla. Crim. App. 1985). However, in 1968 the Oklahoma Legislature passed Okla. Stat. tit. 22, §§ 436 *et seq*. which has been interpreted by the OCCA to permit joinder of offenses, thereby repealing § 404. *Id*. at 768. Thus, under Oklahoma law, "joinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions." *Id*. As evidenced by his double jeopardy claim, Petitioner does not contend the separate offenses for which he was convicted arose out of more than one criminal act or transaction. And, the record clearly establishes that the separate offenses for which Petitioner was convicted arose out of one criminal act or transaction or were part of a series of criminal acts or transactions. Because this claim lacks merit, Petitioner's trial counsel was not ineffective for failing to raise the issue. Accordingly, appellate counsel was not ineffective for failing to raise this claim of ineffective assistance of trial counsel on direct appeal.

---

[3](...continued)
same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count.

Okla. Stat. tit. 22, § 404 (2001).

The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland*, and Petitioner is not entitled to habeas relief on this claim.

### B.    Failing to Object to In-Court Identification of Petitioner

Petitioner contends trial counsel was ineffective for failing to object to the in-court identification of Petitioner by the victim, Samir Khalil.  In addition, Petitioner contends trial counsel should have requested a pre-trial photographic line-up.  According to Petitioner, the crime was highly publicized and Mr. Khalil was only able to make a positive identification as a result of having seen pictures of Petitioner in the news.

The record shows that immediately after the crime, while the victim, Samir Khalil, was sitting in the back of an ambulance, he made a mistaken identification of a suspect.  The suspect was an Hispanic male whom police had detained in the back of a police car.  Mr. Khalil made the identification from a distance of several feet.   The window of the police car in which the suspect was seated was rolled up.   At the time of the identification, Mr. Khalil was bleeding from head injuries and extremely shaken from the events surrounding the crime.  He had not yet spoken to his wife or his son, both victims of the home invasion.  Tr. Vol. II at 157-161.

Several hours later after Mr. Khalil had received hospital treatment for his injuries, he was interviewed by Detective Scott at the police station. Detective Scott testified that he questioned Mr. Khalil about his identification and even though Mr. Khalil remained adamant that he had correctly identified the suspect, Detective Scott determined Mr. Khalil had not

made a "good ID."  Tr. Vol. V at 192.    Detective Scott had the suspect released from custody.  Tr. Vol. V at 194.

At trial, Mr. Khalil testified that during a struggle with Petitioner, he managed to pull the mask off Petitioner and get a "good look at his face."  Tr. Vol. II at 153.  Following this testimony, Mr. Khalil made a positive in-court identification of Petitioner.  *Id.  See also*, Tr. Vol. II at 161-162.  The record further showed Mr. Khalil had made a positive identification of Petitioner at the preliminary hearing.  Tr. Vol. II at 195-197.[4] Mr. Khalil testified that he had misidentified the suspect in the back of the police car immediately following the crime. Tr. Vol. II at 161-162.

On cross-examination of Mr. Khalil, defense counsel pointed out the fact that Mr. Khalil had told Detective Scott during the interview at the police station that he was one hundred percent sure the suspect in custody was the assailant with whom he had engaged in a struggle.  Tr. Vol. II at 182-184, 186, 188-190.  Defense counsel also challenged Mr. Khalil's identification of Petitioner noting that the mask could not have been off the assailant's face for very long.  Tr. Vol. II at 192-193.

Petitioner has failed to establish that counsel rendered deficient performance. Petitioner has not shown that there is a reasonable probability that the outcome of the trial would have been different had counsel objected to Mr. Khalil's in-court identification

---

[4]Two defendants were seated in the courtroom during the preliminary hearing, and Mr. Khalil positively identified Petitioner as the man with whom he had struggled and whose facemask he had pulled up. *Id.*

testimony. *Compare United States v. Eaton*, 20 Fed. Appx. 763, 770 (10th Cir. Sept. 20, 2001) (unpublished op.) (rejecting ineffective assistance of trial counsel claim based on in-court identification testimony and failure to request in-person lineup prior to trial where government's eyewitness was subjected to cross-examination which elicited fact that witness had been unable to identify defendant from a photo array presented to her by police). *See also Monroe v. Smith*, 197 F. Supp.2d 753, 760 (E.D. Mich. 2001) (rejecting ineffective assistance claim based on failure to challenge in-court identification and finding that "[t]he decision to attack the credibility of [the witness's] identification of petitioner through extensive cross-examination, rather than to object to the in-court identification was a reasonable trial strategy").

Petitioner also claims defense counsel should have requested a pre-trial photographic line-up. However, had defense counsel made such a request, the risk existed that Mr. Khalil would make a positive identification of Petitioner. Without that photographic line-up, defense counsel could, as he did at trial, utilize Mr. Khalil's mistaken identification of the Hispanic male as a suspect to the advantage of the defense.

To establish deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This is a heavy burden, as the court presumes counsel's actions constituted sound strategy. *Id.* at 689. As set forth, defense counsel exercised sound trial strategy in not requesting a pre-trial photographic line-up and in conducting a thorough cross-examination of Mr. Khalil on the issue of his identification of Petitioner. Petitioner has failed to the

heavy burden of demonstrating unreasonable performance by counsel.   Accordingly, Petitioner has not established ineffective assistance of trial counsel, and his ineffective assistance of appellate counsel claim is, therefore, without merit.  The OCCA's adjudication of this claim is not contrary to or an unreasonable application of *Strickland*.

## C.   Failing to Raise a *Brady* Claim

In post-conviction proceedings, Petitioner claimed a *Brady* violation alleging the State failed to disclose contents of a videotape seized from the bedroom of his co-defendant, Johnnie Johnson.  According to Petitioner, the tape shows Roxzanne Segura Mansouri, a State's witness, having sexual intercourse with Johnson.  As previously noted, at the time the crime was committed, Roxzanne Mansouri was married to Petitioner though they were separated and living apart.  Roxzanne Mansouri testified that Johnnie Johnson had been her boyfriend prior to her relationship with Petitioner.  Petitioner contends the tape proves Roxzanne Mansouri was having an affair with Johnnie Johnson and that she provided perjured testimony at trial when she testified she had not been intimate with Mr. Johnson since meeting Petitioner.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution violates a defendant's due process rights when it fails to disclose evidence favorable to the defendant that was material either to guilt or punishment. "Evidence is favorable to the defendant if it constitutes either exculpatory or impeachment evidence."  *United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006) (*citing Smith v. Secretary of New Mexico Dept. of Corrs.* , 50 F.3d 801, 825 (10th CIr. 1995)). Evidence is material if there is a reasonable probability that, had

13

the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" of the case. *Id.* "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir.1999) (*quoting Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Petitioner does not state how he became aware of the videotape he alleges the State failed to disclose. He likewise fails to provide specific identifying information about the tape such as when the tape was created. Thus, Petitioner provides no evidentiary support for his contention that the prosecution suppressed evidence – the first element required to establish a *Brady* violation. *Compare United States v. Pedraza*, 27 F.3d 1515, 1527 (10th Cir. 1994) (concluding that defendants "failed to produce any convincing evidence that . . . tapes [of telephone calls] ever existed"). It follows, of course, that if the evidence does not exist, counsel cannot be deemed ineffective for failing to investigate and/or failing to raise a *Brady* claim. However, in addressing this claim, Respondent neither admits nor denies the existence of the videotape. The Court, therefore, proceeds under the assumption that the first element is satisfied.

Even so, Petitioner's *Brady* claim lacks merit because Petitioner has failed to demonstrate the evidence was material. At trial, Ms. Mansouri testified that Johnnie Johnson was her ex-boyfriend. She testified that she met Petitioner, her husband, through Johnnie

Johnson.  She further testified that at the time of the crime, she and Petitioner had separated and were living apart and that Petitioner and Johnnie Johnson were living together in an apartment.  Tr. Vol. IV at 68-69, 70.  Ms. Mansouri also described her relationship with Johnson after she married Petitioner and testified that she continued to be friends with him.  Tr. Vol. IV at 69-70.

Petitioner contended in state post-conviction proceedings that Roxzanne Segura Mansouri testified "she was only friends with Mr. Johnson and that she has not been intimate with him since she met  [Petitioner]."  *See* Response, Exhibit 4, Petition in Error at 5.  He further contended the tape "proves that the witness was having an affair with Mr. Johnson."  *Id*.  Petitioner, therefore, contended the State offered perjured testimony.  Petitioner's contentions are based on a mischaracterization of the testimony given by Ms. Mansouri.  Contrary to Petitioner's assertion, she was not asked any questions as to whether she had been "intimate" with Mr. Johnson subsequent to her marriage to Petitioner.  Thus, even if Ms. Mansouri had sexual intercourse with Johnnie Johnson during her marriage to Petitioner, she did not commit perjury.

To the extent Petitioner contends the videotape was material as impeachment evidence to undermine Ms. Mansouri's credibility, its impeachment value, if it had any at all, was extremely weak.  Ms. Mansouri testified she had dated Johnnie Johnson and continued to be friends with him.  She also testified she was separated from Petitioner.  Ms. Mansouri's testimony on direct examination clearly established her relationship with Mr. Johnson.  Moreover, as set forth above, Petitioner failed to allege facts indicating when the videotape

15

was made.  The videotape could have been made during a period of time wholly irrelevant to the events at issue in this case.  Finally, it is significant that Ms. Mansouri equally implicated Johnnie Johnson and Petitioner in the commission of the crime.  Her testimony was in no way more favorable to Mr. Johnson.

For all these reasons, Petitioner cannot establish there is a reasonable probability that, had the videotape been disclosed to the defense, the result of the proceeding would have been different. Because the *Brady* claim lacks merit, neither trial or appellate counsel rendered ineffective assistance by failing to investigate the videotape or raise a *Brady* issue.

In sum, the OCCA, citing *Strickland v. Washington*, determined that Petitioner had not established his counsel's performance was deficient and had not shown that the omitted issues would have changed the outcome of this trial and direct appeal.  Petitioner has failed to show that these determinations are contrary to or an unreasonable application of Supreme Court law. Grounds One and Two of the Petition should be denied.

### Ground Three – Due Process Violation

In Ground Three, Petitioner claims his due process rights were violated as a result of the in-court identification by the victim, Samir Khalil.  Petitioner raised this claim for the first time in state post-conviction proceedings.  *See* Response, Exhibit 4, Brief in Support of Petition in Error at 3-4, Proposition II.  The OCCA affirmed the denial of post-conviction relief on this claim finding the claim was procedurally barred pursuant to Okla. Stat. tit. 22, § 1086 as a claim that could have been raised on direct appeal.  *See* Response, Exhibit 5, OCCA Order Affirming Denial of Application for Post-Conviction Relief at 1-2.

The Tenth Circuit has determined that the procedural law set forth in Okla. Stat. tit. 22, § 1086 is an independent and adequate state ground for denying habeas relief. *Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (*citing Hain v. Gibson*, 287 F.3d 1224, 1230 (10th Cir. 2002)). Therefore, review of this claim is permitted only if Petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[5]

The OCCA recognized that Petitioner asserted ineffective assistance of counsel as cause for the procedural default of this claim but determined, *citing Strickland*, that Petitioner failed to demonstrate his counsel's performance was deficient or the outcome of his trial and appeal would have been different. *See* Response, Exhibit 5, OCCA Order Affirming Denial of Post-Conviction Relief at 2.

Petitioner's ineffective assistance of counsel claims -- as related to the alleged due process violation resulting from the in-court identification -- have been fully analyzed in relation to Petitioner's first two grounds for relief. These claims are without merit. Therefore, Petitioner has failed to establish sufficient cause to overcome the procedural default of this claim. Ground Three of the Petition should be denied.

---

[5]A procedurally defaulted claim may also be reviewed if failure to consider a petitioner's claim would result in a "fundamental miscarriage of justice," on the ground that the petitioner is actually innocent of the crime. *Coleman*, 501 U.S. at 750; *Ellis v. Hargett*, 302 F.3d 1182, 1186 and n. 1 (10th Cir. 2002). Petitioner does not argue that failure to reach the merits of this claim will result in a fundamental miscarriage of justice .

**Ground Four – *Brady* Claim**

In Ground Four of the Petition, Petitioner raises a stand-alone *Brady* claim.  The

OCCA deemed the stand-alone claim procedurally barred and determined Petitioner had

failed to demonstrate cause for overcoming the procedural bar through his allegations of

ineffective assistance of counsel.  *See* Response, Exhibit 5, OCCA Order Affirming Denial

of Post-Conviction Relief.  Because the merits of Petitioner's *Brady* claim have been

reviewed in the context of Petitioner's ineffective assistance of counsel claims and

determined to be without merit, Petitioner has failed to establish cause sufficient to overcome

the procedural bar.  Ground Four of the Petition should be denied.

**Ground Five – Double Jeopardy Violation**

In Ground Five, Petitioner claims his multiple convictions violate the Double

Jeopardy Clause of the Fifth Amendment.  Petitioner raised this claim on direct appeal of his

criminal conviction.  He claimed weapons were used "throughout the attempt to rob the

Khalils; yet, the State carved numerous crimes from the use of the weapons."  *See* Response,

Exhibit 1, Brief of Appellant at 11-12.  Petitioner claimed, therefore, that "out of the

kidnapping, assault, and attempted robbery conviction, only one can stand, and all others

must be dismissed on the basis of double jeopardy."  *Id*. at 12.

The OCCA reversed Petitioner's conviction in part and dismissed Counts Seven and

Twelve.  The OCCA found:

> [T]he convictions for both attempted robbery and kidnaping committed against
> victim Najaya Khalil constitutes a violation of 21 O.S. 2001, § 11, and the
> convictions for both kidnapping and pointing a firearm against Samir Khalil

constitute a violation of 21 O.S. 2001, § 11. [Citation omitted].  Therefore, counts seven and twelve must be dismissed.  As Appellant was acquitted of the Robbery against Samir Khalil, none of the convictions can merge with that offense.  Further, none of the remaining counts constitutes double jeopardy or double punishment.

*See* Response, Exhibit 3, OCCA Summary Opinion at 2.[6]

In this habeas action, Petitioner claims his remaining convictions for "kidnaping, assault, and attempted robbery crimes" violate double jeopardy.  *See* Brief in Support of Petition for Writ of Habeas Corpus [Doc. #2] at 15.   It is well-established under Oklahoma law that "where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons.  Temporal and/or spacial proximity . . . are not material." *Burleson v. Saffle*, 46 P.3d 150, 152 (Okla. Crim. App. 2002).   The record shows that Petitioner's conviction for attempted robbery was for acts against the female victim Najaya Khalil and that this is the only remaining conviction for crimes against her.  Petitioner was acquitted of the robbery charge as related to the male victim Samir Khalil. Therefore, the conviction for attempted robbery is not subject to a double jeopardy challenge.

Accordingly, Petitioner's double jeopardy challenge is limited to his convictions on Count 10, Assault and Battery with a Dangerous Weapon, and Count 11, Kidnapping for

---

[6]As a result of the OCCA's ruling, Petitioner's remaining convictions are as follows: Unauthorized Use of a Motor Vehicle (Counts 2 and 3); Attempted Robbery with Firearms (Najaya Khalil) (Count 5); First Degree Burglary (Count 6); Pointing a Firearm at Another (Officer Lanman) (Count 9); Assault and Battery with a Dangerous Weapon (Samir Khalil) (Count 10); Kidnapping for Extortion (Samir Khalil) (Count 11); and Conspiracy to Commit Robbery with Firearms (Samir Khalil) (Count 13).

Extortion – both criminal acts against Samir Khalil.  The OCCA determined that "none of the[se] remaining counts constitutes double jeopardy or double punishment."  *See* Response, Exhibit 3, OCCA Summary Opinion at 2.

The Double Jeopardy Clause protects against multiple punishments for the same offense.  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794 (1989).  "[W][here the same act or transaction constitutes a violation of two statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Here, the two offenses, Assault and Battery with a Dangerous Weapon and Kidnapping for Extortion, clearly require different factual elements of proof.[7]  Therefore, Petitioner's convictions for both do not violate the Double Jeopardy Clause of the Fifth Amendment.  The OCCA's determination of this issue is neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner's Fifth Amendment double jeopardy claim is without merit and should be denied.

---

[7]Assault and Battery with a Dangerous Weapon requires proof of the following elements:

First, an assault and battery;
Second, upon another person;
Third, with a dangerous weapon;
Fourth, without justifiable or excusable cause;
Fifth, with intent to do bodily harm.

*See* OUJI-CR 4-12; *see also* Original Record [Doc. #15] at 215, Instruction Number 11.

Kidnapping for Extortion requires proof of the following elements:

First, unlawful
Second, forcible seizure and confinement;
Third, of another,
Fourth, with intent to extort money, property or a valuable thing from any person.

*See* OUJI-CR 4-111; *see also* Original Record at 217, Instruction Number 13.

Petitioner further contends his convictions violate Oklahoma's statutory prohibition against double punishment. *See* Okla. Stat. tit. 21, § 11.[8] As set forth above, this claim was rejected by the OCCA.

Under Oklahoma law, a section 11 analysis is "a separate matter, not involving double jeopardy issues." *Davis v. State*, 993 P.2d 125, 125 (Okla. Crim. App. 1999). As this issue involves purely a matter of state law, it does not serve as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). *See also Howell v. Kaiser*, No. 01-7033, 2002 WL 89930 at *2 (10th Cir. Jan. 24, 2002) (unpublished op.) ("As to Mr. Howell's claim that his conviction for both possessing and pointing a firearm after former conviction of felony violates Oklahoma law against double punishment, we agree with the magistrate judge and the district court that this issue is a matter of state law which is not cognizable in

---

[8]Section 11 provides in pertinent part:

> [A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, . . . but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

Okla. Stat. tit. 21, § 11 (2001).

a federal habeas action.") (*citing Estelle* 502 U.S. at 67-68).  Because Petitioner's section 11

claim is not cognizable in this federal habeas action, it should be denied.[9]

### Ground Six – Violation of Confrontation and Due Process Rights

On direct appeal, the OCCA determined that certain hearsay evidence introduced

during the testimony of the State's witness, Roxzanne Segura Mansouri, violated Petitioner's

rights under the Confrontation Clause, but further determined the error was harmless.

Petitioner challenges the OCCA's harmless error determination.   In addition, Petitioner

claims admission of this evidence violated his due process rights to a fundamentally fair trial.

Co-defendant Johnnie Johnson was unavailable to testify at trial.[10]  However, the trial

court permitted Roxzanne Segura Mansouri to testify about a number of statements Johnson

made to her immediately following the robbery.   Several of these statements inculpated

Petitioner.   On direct appeal, Petitioner specifically challenged the following testimony:

> He kept saying he couldn't believe he did what he did, what they did.  Tr. Vol.
> IV at 72.

> [H]e said they had did [sic] a robbery and he needed to get Al [Petitioner] out
> of jail or see – he had to go to his house to get some items so he could pawn
> them to try to help Al get out of jail.  Tr. Vol. IV at 72.

---

[9]Moreover, the OCCA's determination that Petitioner's remaining convictions do not violate section 11 is binding on this Court in resolving Petitioner's double jeopardy claims.  *See Cummings*, 161 F.3d 610, 615 (10th Cir. 1998) (in determining whether the state legislature intended to prohibit multiple punishments for a single criminal incident, federal courts are "bound by a state court's determination of the legislature's intent.").   Therefore, to the extent this state-law claim could support a section 2254 habeas petition, the claim is without merit.

[10]The record does not disclose why Johnnie Johnson was unavailable at trial.

He told me that he was – he needed to get some stuff out of his apartment so that he could pawn it to get Mansouri out of jail.  We thought he was either dead or in jail.  Tr. Vol. IV at 74.

He told me [that it was the crime scene].  Johnnie Johnson told me.  Tr. Vol. IV at 78.

[In response to a question asking how she knew her husband had a gun] Johnnie Johnson said they had guns.  Tr. Vol. IV at 114.

The OCCA determined the statement: "I can't believe what we just did" was an excited utterance and did not implicate Petitioner in any way.  *See* OCCA Summary Opinion at 3.  Therefore, the OCCA determined the admission of this statement did not violate Petitioner's confrontation rights.  *Id*.  The OCCA determined, however, that statements by Johnson that he and Petitioner had committed a robbery and that Johnson needed to get items to pawn in order to help Petitioner did violate Petitioner's right to confrontation.  *Id*.  The OCCA further concluded, however, that any error as a result of the admission of these statements constituted harmless error.  *Id*.  The OCCA did not make any express ruling as to whether the statements violated Petitioner's federal due process rights.

### A.   Right to Confrontation

The Sixth Amendment of the United States Constitution guarantees an individual accused of a criminal offense the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held the Confrontation Clause bars the admission of testimonial hearsay

unless the declarant is shown to be unavailable and the defendant had an earlier opportunity to cross-examine the declarant.  *Id*. at 51-52.[11]

As the Tenth Circuit has observed, "[t]he *Crawford* decision marks a fundamental shift in the Supreme Court's Confrontation Clause jurisprudence." *United States v. Solomon*, 399 F.3d 1231, 1237 n. 2 (10th Cir. 2005).  Prior to *Crawford*, the Confrontation Clause did not bar the admission of an unavailable witness's statements as long as those statements bore "adequate indicia of reliability," a test met when the evidence either fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  Pursuant to *Crawford*, however, the decisive issue is whether the hearsay statements are testimonial.  If they qualify as testimonial, the fact that the statements may have been admissible pursuant to a hearsay exception is of no moment. *Crawford*, 541 U.S. at 68-69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").[12]

---

[11]At the time the OCCA reached its decision, the Supreme Court had decided *Crawford*. Therefore, *Crawford* governs Petitioner's claim that Roxanne Segura Mansouri's testimony about statements made to her by Johnson violated his confrontation rights.  *See Brown v. Uphoff*, 381 F.3d 1219, 1224 n. 4 (10th Cir. 2004) ("To determine the applicable 'clearly established' law, we look to Supreme Court precedent as it existed when the state court reached its decision.").

[12]It is clear the OCCA did not apply *Crawford* when it addressed Petitioner's Confrontation Clause claim.  The OCCA's analysis focused on whether the statements were admissible under a hearsay exception – an inquiry relevant under *Ohio v. Roberts*.  The OCCA's reasoning did not address whether the statements at issue where testimonial or non-testimonial.  The OCCA's determination, therefore, is contrary to clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (A state court's decision is not contrary to clearly established federal law "so long

(continued...)

The *Crawford* Court declined to give precise definition to "testimonial" hearsay. *See id.*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'").  Nonetheless, the Court did provide "relevant guideposts to frame [the] analysis." *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005).  The Court determined that, at a minimum, testimonial hearsay includes "prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

The Supreme Court provided additional guidance as to what constitutes testimonial hearsay in *Davis v. Washington*, __ U.S. __, 126 S.Ct. 2266 (2006).  In *Davis*, the Court applied an objective test to determine whether police interrogation that took place in the course of a 911 call produced testimonial statements.  *See also Summers*, 414 F.3d at 1302 (formulating an objective test for determining whether hearsay is testimonial that focuses on the reasonable expectations of the declarant that the statement may later be used at trial).  The *Davis* Court concluded the circumstances of the interrogation indicated that the primary purpose of the witness's interrogation was "to enable police assistance to meet an ongoing emergency." *Davis*, 126 S.Ct. at 2277.  Therefore, the statements were not testimonial. *Id*. As the Court explained, the declarant "simply was not acting as a *witness*; she was not

---

[12](...continued)
as *neither the reasoning nor the result of the state-court decision* contradicts [Supreme Court] precedent.") (emphasis added).  The OCCA's determination, therefore, is not entitled to AEDPA deference and this Court reviews the confrontation clause claim *de novo*.

*testifying*.  What she said was not a 'weaker substitute for live testimony' at trial." *Id.* at

2277 (emphasis in original) (*quoting United States v. Inadi*, 475 U.S. 387, 394 (1986)).

In *Davis,* the Court made express what was suggested in *Crawford*: the Confrontation

Clause applies only to testimonial hearsay.  *Id.*, 126 S.Ct. at 2274.  The admission of non-

testimonial hearsay statements, therefore, does not present a Confrontation Clause violation.

*See, e.g., United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006) ("The Supreme

Court . . . in *Davis* made clear that the right to confrontation only extends to testimonial

statements, or, put differently, the Confrontation Clause simply has no application to

nontestimonial statements.") *citing Davis*, 126 S.Ct. at 2274.  The *Davis* Court noted as

examples of statements that are "clearly nontestimonial" "statements made unwittingly to a

Government informant" and "statements from one prisoner to another." *Id*. at 2275 (*citing

Bourjaily v. United States*, 483 U.S. 171, 181-184 (1987) and *Dutton v. Evans*, 400 U.S. 74,

87-89 (1970) (plurality opinion)).

Here, the statements challenged by Petitioner are clearly not testimonial.  The

statements were made by Johnnie Johnson to his ex-girlfriend and Petitioner's wife, not to

a police officer or indeed to anyone acting in an official capacity.  In context, Johnnie

Johnson's statements to his ex-girlfriend cannot give rise to any reasonable inference that he

was acting as a *witness* or *testifying* or that what he said was akin to a "weaker substitute for

live testimony at trial." *See Davis* at 2277.  The circumstances of the statements do not

objectively indicate that the primary purpose of the statements was to establish or prove past

events potentially relevant to later criminal prosecution. *Id*. at 2273-2274.  To the contrary,

27

Johnnie Johnson made the statements in the course of attempting to conceal evidence of his participation in the crime, and he was seeking assistance from Roxzanne Mansouri Segura to accomplish this end.  *Compare United States v. Franklin*, 415 F.3d 537 (6th Cir. 2005) (statements made by co-defendant to his friend that inculpated defendant in commission of robbery were not testimonial; friend was not "a police officer or a government informant seeking to elicit the statements to further a prosecution against [the defendants]").  Accordingly, Petitioner has failed to establish a violation of his confrontation rights under the U.S. Constitution.[13]

In sum, on *de novo* review, Petitioner has failed to establish a violation of his rights under the  Confrontation Clause, and his claim for habeas relief should be denied.

---

[13]     Because no confrontation violation occurred, this Court need not determine whether admission of the statements was harmless error.  However, even if the Court were to engage in a harmless error analysis, Petitioner would not be entitled to habeas relief.  *See  Stevens v. Ortiz*, 465 F.3d 1229 (10th Cir. 2006) (habeas relief not warranted unless Confrontation Clause error arising from admission of hearsay statement "'had a substantial and injurious effect or influence in determining the jury's verdict'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In addressing Petitioner's claim, the OCCA did not apply the harmless error standard of *Chapman v. California*, 386 U.S. 18, 24 (1967) (harmless beyond a reasonable doubt) or *Brecht v. Abrahamson*, 507 U.S. 619 (1993), but rather applying state law standards, concluded that the error was harmless because "the remaining evidence was overwhelming."  Because the OCCA did not apply the federal harmless error standard, this Court would be required to apply the standard set forth in *Brecht*.  *See Herrera v. Lemaster*, 301 F.3d 1192, 1199 (10th Cir. 2002) (applying *Brecht* when the state court did not apply the *Chapman* harmless error standard).

As Respondent shows, Petitioner was positively identified by the victim, Samir Khalil, as one of the individuals who entered his home and attempted to rob him.  In addition, a trash bag loaded with items taken from the apartment Petitioner shared with Johnnie Johnson provided evidence of Petitioner's involvement in the crime.  This evidence included weapons, ammunition, and a hand-drawn map of the victims' residence and surrounding area.  Tr. Vol. IV at 86, 98-99, 152-153.  In addition, for at least two weeks prior to the crime, Petitioner had been driving one of the vehicles to be used as a getaway car, a Toyota truck.  Tr. Vol. IV at 57-60; Tr. Vol. VI at 34-35. In light of this evidence, Petitioner cannot show that admission of the statements had a substantial and injurious effect or influence in determining the jury's verdict.

**B.**     **Due Process Violation**

Petitioner alternatively claims in Ground Six that admission of the hearsay statements of Johnnie Johnson through the testimony of Roxzanne Segura Mansouri violated his due process rights by denying him a fundamentally fair trial.  Even if there were some arguable due process violation, the evidence against Petitioner, as set forth above, is sufficient to render the violation harmless.  *See,* discussion *supra* at note 13; *see also Patton v. Mullin*, 425 F.3d 788, 800-801 (10th Cir. 2005) (addressing alleged due process violation and noting that "in a habeas proceeding, any trial errors will be deemed harmless unless they had a substantial and injurious effect or influence in determining the verdict."); *see also Duvall v. Reynolds*, 139 F.3d 768, 788 (10th Cir. 1998) (finding that admission of prior acts testimony, even if constitutionally erroneous, would be harmless because any such error did not have a substantial and injurious effect on the jury's verdict).   Therefore, habeas relief should be denied as to the claims raised in Ground Six of the Petition.

**VI.**     **Request for Evidentiary Hearing**

In most conclusory fashion, Petitioner requests an evidentiary hearing.  He made a similar conclusory request in his post-conviction application.  Petitioner has failed to articulate a basis for an evidentiary hearing.  *See, e.g., Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858-859 (10th Cir. 2005) (factual allegations in support of request for evidentiary hearing in federal habeas corpus proceeding must be specific and particularized not general or conclusory) (citation omitted).  Therefore, it is recommended that his request be denied.

## VII.   __Pending Motions__

Pending before the Court are two motions filed by Petitioner: (1) Motion for Transcripts at Public Expense [Doc. #20] and Motion for Leave to Proceed *In Forma Pauperis* [Doc. #21].   Respondent has filed an Objection to Petitioner's Motion for Transcripts at Public Expense [Doc. #24].  Petitioner's motions should be denied.

Petitioner moves for production of state court records and transcripts pursuant to 18 U.S.C. § 3006A.[14]  This statutory provision, however, addresses court appointment of counsel for financially eligible persons.  It does not provide authority for ordering production of transcripts at public expense to habeas petitioners.  Petitioner cites no other authority in support of his request for records and transcripts.

Petitioner contends he is a layman and does not possess the necessary knowledge and skill to present all issues of legal merit without the requested court records and transcripts. However, other than making conclusory allegations, Petitioner has not shown how his inability to obtain transcripts of the state court proceedings has interfered with his ability to present his claims.  "Although an indigent criminal defendant has an absolute right to a transcript on direct appeal, *see Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir.1992), there is no constitutional right to a free transcript on habeas for the purpose of searching for error."

---

[14]Petitioner cites 18 U.S.C. § 3006(a) and (b) as the basis for his requested relief.  As no such statutory provision exists, the Court construes Petitioner's request as made pursuant to 18 U.S.C. § 3006A.

*Sweezy v. Ward*, No. 99-6131, 2000 WL 192904 (10th Cir. Feb. 17, 2000) (unpublished op.). Petitioner's motion requesting records and transcripts should be denied.

Presumably, Petitioner has filed an *in forma pauperis* motion in conjunction with his Motion for Transcripts as evidence that he cannot afford to pay for transcripts.  Petitioner previously filed a Motion for Leave to Proceed *In Forma Pauperis* [Doc. #8] but that motion was denied as moot because Petitioner had already paid his filing fee at the time the motion was filed.  *See* Receipt for Money [Doc. #6] and Order [Doc. #9].  Because Petitioner has already paid the filing fee, his pending *in forma pauperis* motion should be denied as moot.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion  for Transcripts at Public Expense [Doc. #20]  be denied and that Petitioner's Motion for Leave to Proceed *In Forma Pauperis* [Doc. #21] be denied as moot.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by December   27th  , 2006.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __7th__ day of December, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE